**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 11 CR 0750 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JASON CORREA and ) | |
| SAUL MELERO ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Jason Correa's and Saul Melero's joint renewed motion to reconsider [149] the Court's October 17, 2013 and March 14, 2014 Opinions and Orders [110, 137] denying Defendants' joint motion to suppress evidence [74, 75]. For the reasons stated below, Defendants' motion [149] is denied.

**I.   Background**

The Court extensively discussed the facts of this case in its previous opinions [110, 137]. Most relevant here are the following facts:  In October 2011, DEA agents arrested Correa and searched his car, seizing four garage door openers and three sets of keys inside. They drove to 1717 South Prairie, a building that they believed to be associated with the suspected drug activity, and attempted to activate the garage there using Correa's garage door openers. When the garage failed to open, they tested the openers on nearby garages and eventually found a match. Using one of the key fobs, they entered the lobby of that building. They tested a key from Correa's car on the residents' mailboxes and discovered that it matched the mailbox of unit 702. Believing that unit to be Correa's home, the agents sought and received Correa's consent to search it. Inside the apartment, they discovered drugs, weapons, and documentation belonging to Melero, another resident of the unit, whom they subsequently arrested.

1

Defendants moved to suppress the evidence from unit 702. The Court ruled that the garage-testing, the entry into the lobby using the fob, and the mailbox-testing were permissible under *United States v. Concepcion*, 942 F.2d 1170 (7th Cir. 1991), and *United States v. Flores-Lopez*, 670 F.3d 803 (7th Cir. 2012). In their renewed motion to reconsider, Defendants argue that neither precedent applies following the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014). They contend that *Riley* effectively overrules *Flores-Lopez* in its entirety and limits *Concepcion* to searches involving non-electronic devices. They further argue that *Riley* affirmatively required the agents to obtain a warrant before using the garage openers or key fobs.

In response, the Government argues that *Riley*'s holding is immaterial to this motion. According to the Government, even if *Riley* rendered the search unconstitutional, the exclusionary remedy would be unavailable under *Davis v. United States*, 131 S. Ct. 2419, 2434 (2011). *Davis* creates a good faith exception, providing that "when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." *Davis*, 131 S. Ct. at 2434. Accord *United States v. Taylor*, No. 14-1981, slip op. at 4 (7th Cir. Jan. 14, 2015) (describing *Davis* as holding "that the exclusionary rule does not apply 'when the police conduct a search in objectively reasonable reliance on binding appellate precedent'"). The Government argues that the agents conducted themselves in objectively reasonable reliance on *Concepcion*, which was binding Seventh Circuit precedent at the time of the law enforcement activity at issue here, and that this case therefore falls squarely within *Davis*'s good faith exception.[1] In reply, Defendants concede that if *Davis* applies, the exclusionary remedy is unavailable, but they argue that the garage-testing in particular falls

---

[1] The government's response brief and Defendants' reply brief focus exclusively on *Concepcion* because the Seventh Circuit had not decided *Flores-Lopez* at the time of the events at issue.

outside the good faith exception. At issue here, therefore, is whether the agents tested the garages in objectively reasonable reliance on binding appellate precedent.

**II.     Analysis**

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." A search occurs when the government invades a person's reasonable expectation of privacy, *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), or physically intrudes into a constitutionally protected area in order to obtain information, *United States v. Jones*, 132 S. Ct. 945, 951 (2012). To compel respect for the Fourth Amendment's guaranty, the Supreme Court created the exclusionary rule. *Elkins v. United States*, 364 U.S. 206, 217 (1960). The rule's sole purpose is to deter police misconduct. *Davis*, 131 S. Ct. 2426. It is not to remedy a personal right or redress a constitutional injury. *Id.*

Exclusion is a "last resort" because it frequently "suppress[es] the truth and set[s] the criminal loose in the community without punishment." *Davis*, 131 S. Ct. at 2427 (citation omitted). The Supreme Court therefore permits exclusion only when the benefit of deterrence outweighs these costs. *Id.* (citation omitted). The benefits of deterrence vary with the "flagrancy of the police misconduct at issue." *United States v. Leon*, 468 U.S. 897, 104 (1984). When the police act with "an objectively 'reasonable good-faith belief'" that their conduct is constitutional, exclusion is unwarranted because the costs of exclusion outweigh the deterrence benefits. *Davis*, 131 S. Ct. at 2427 (quoting *Leon*, 468 U.S. at 909 (finding exclusion unavailable when the police conducted a search in objectively reasonable reliance on a subsequently invalidated search warrant)). When the police act with "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence," exclusion is warranted because its deterrent value outweighs the costs. *Herring v. United States*, 555 U.S. 135, 144 (2009) (finding

exclusion unwarranted where the police arrested the defendant pursuant to an arrest warrant that was subsequently recalled due to isolated, negligent recordkeeping); see *Davis*, 131 S. Ct. at 2427.

*Davis* extended *Leon*'s and *Herring*'s good faith exception to scenarios involving retroactive changes in law. See *United States v. Martin*, 712 F.3d 1080, 1082 (7th Cir. 2013). *Davis* addressed a scenario that began with a routine traffic stop and the defendant's subsequent arrest. While Davis was handcuffed in the back of the patrol car, the police searched his car and found a gun. At the time, the Eleventh Circuit, like many other circuits, had interpreted *New York v. Belton,* 453 U.S. 454 (1981), to create a bright-line rule authorizing car searches incident to the arrest of the car's occupant. More specifically, the Eleventh Circuit had interpreted *Belton* to authorize a car search incident to arrest where the defendant was "quickly pulled from the vehicle, handcuffed, laid on the ground, and placed under arrest." *United States v. Gonzalez*, 71 F.3d 819, 822 (11th Cir. 1996).

While Davis's appeal was pending, the Supreme Court decided *Arizona v. Gant,* 556 U.S. 332 (2009), which held that "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. Applied retroactively to Davis's search, *Gant* rendered *Davis's* search unconstitutional. The question before the Supreme Court was whether this constitutional injury entitled Davis to the exclusionary remedy. The Court answered no, finding that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Davis*, 131 S. Ct. at 2423-24. In those cases, "suppression would do nothing

4

to deter police misconduct," and "it would come at a high cost to both the truth and the public safety." *Id.* at 2423.

In her concurring opinion, Justice Sotomayor demarcated the limits of *Davis*, explaining that it applied only where "binding appellate precedent *specifically authorize[d]* a particular police practice" because, as the majority had explained, "application of the exclusionary rule cannot reasonably be expected to yield appreciable deterrence" in such circumstances. *Davis*, 131 S. Ct. at 2435 (Sotomayor, J., concurring) (quoting the majority at 2429). *Davis*, however, did not present "the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled." *Id.*

> "If, as the Government argues, all rulings resolving unsettled Fourth Amendment questions should be nonretroactive, then, in close cases, law enforcement officials would have little incentive to err on the side of constitutional behavior. Official awareness of the dubious constitutionality of a practice would be counterbalanced by official certainty that, so long as the Fourth Amendment law in the area remained unsettled, evidence obtained through the questionable practice would be excluded only in the one case definitively resolving the unsettled question."

*Id.* (quoting *United States v. Johnson,* 457 U.S. 537, 561 (1982) (footnote omitted)). The Seventh Circuit adopted Justice Sotomayor's limiting principle in *United States v. Martin*, 712 F.3d 1080, 1082 (7th Cir. 2013).

At issue here is whether the garage-testing falls within *Davis*'s good faith exception, given the holding in *Concepcion*. Although the Court discussed *Concepcion* in detail in its previous order [110], further discussion is necessary to determine whether the case specifically authorized the garage-testing or whether the law governing the constitutionality of the garage-testing was unsettled when it took place. In *Concepcion*, DEA agents arrested the defendant and seized his keys. *Concepcion*, 942 F.2d at 1171. After seeing the name "Concepcion" on the mailbox of a nearby apartment building, they conducted two searches relevant here. First, they used the defendant's keys to open the door to the common area of the apartment building. *Id.*

5

Second, they used his keys to open his apartment door. *Id.* Having identified the correct apartment, the agents then sought and obtained consent from Concepcion to search the unit, where they found evidence that Concepcion then attempted to suppress. *Id.*

On appeal, the questions before the Seventh Circuit were whether (i) use of the defendant's key to unlock the common area and (ii) use of his key to unlock his apartment were constitutional. The Seventh Circuit held that the first step was not a search, citing the well-established rule that a person has no reasonable expectation of privacy in a common area.[2] *Concepcion*, 942 F.2d at 1172 (citing, among others, *United States v. Acevedo*, 627 F.2d 68, 69 n.1 (7th Cir. 1980); *United States v. Boden*, 854 F.2d 983 (7th Cir. 1988)). The Court of Appeals next held that the second step, by contrast, was a search because a keyhole contains private information inaccessible to strangers: the identity of the person who may access the space beyond. *Id.* The Seventh Circuit then concluded that the search was reasonable, even in the absence of probable cause or a warrant, for two reasons. First, the invasion of privacy was minimal. Insertion of the key into the keyhole only revealed one fact: who could access the space beyond. *Id.* at 1173. Second, the police easily could have discovered the same information through alternative means involving neither probable cause nor a warrant.

> They could have looked him up in the telephone book or conducted a computer search of drivers' licenses. If they did not find him (or if they found too many persons of the same name), they could have visited the landlord and asked who lived in apartment 1C. Instead of asking the landlord who lived there, they could have shown the landlord the key in their possession and asked the landlord to compare it with the key issued to the tenant. So too the agents could have followed Concepcion around to learn his residence (as they did; the key just confirmed what they thought they knew). The information the agents obtained from putting the key in the lock thus was no secret.

---

[2] The Supreme Court had yet to hear *Jones*, which held that a search includes not only an invasion into a reasonable expectation of privacy but also a physical intrusion into a constitutionally protected area to obtain information. *Jones*, 132 S. Ct. at 951. Accordingly, the Seventh Circuit's analysis focused only on the invasion into a reasonable expectation of privacy.

*Id.* 1173.

According to Defendants, the garage-testing falls outside *Davis*'s good faith exception for several reasons. First, they argue that *Concepcion* was not "binding appellate precedent" that "specifically authorized" the garage-testing within the meaning of *Davis*. The *Davis* court found that "binding appellate precedent" "specifically authorized" the search at issue there because the Eleventh Circuit had applied *Belton*'s bright-line rule to approve a factually identical search in *United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996). Defendants argue that *Concepcion*, in contrast, adopted a balancing test, finding that the need for probable cause or a warrant increases with the invasiveness of a search. They suggest that a balancing test, by its nature, creates unsettled law because it is fact-sensitive. They also argue that *Concepcion*, specifically, creates unsettled law because it failed to identify exactly when an invasion is minimal enough to dispense with the need for probable cause or a warrant; it placed the search before it on one side of the scale without identifying the precise tipping point.

*Concepcion* may indeed create a sliding scale, and it may not identify the tipping point. But the Court need not know the precise tipping point to determine that the garage-testing fell comfortably within the scope of police conduct approved in *Concepcion*. Assuming that the garage was common to all the tenants—which Defendants do not appear to contest—then *Concepcion* clearly provides that the garage-testing was not a search at all because there is no reasonable expectation of privacy in the common areas of a residential building. *Concepcion*, 942 F.2d at 1172 ("We think the district court on solid ground in holding that a tenant has no reasonable expectation of privacy in the common areas of an apartment building") (citing, among others, *Acevedo*, 627 F.2d at 69 n.1; *Boden*, 854 F.2d 983). And even if the garage had belonged to only to the residents unit 702—which Defendants do not suggest—the use of Correa's garage

7

door opener to open his garage and identify his building still would be a search specifically authorized by *Concepcion*. If the police may test a person's key on various apartments to identify his particular apartment, then, *a fortiori*, they may use his garage door opener to test various garages to identify his building. The garage-testing here revealed even less private information than the keyhole search in *Concepcion*; it identified the building of which Defendants were one of many tenants, whereas the keyhole search in *Concepcion* revealed the defendant's particular unit within a building. As in *Concepcion*, the Government could have discovered the same information through alternative means involving neither probable cause nor a warrant, like following Defendants home.

Defendants disagree, arguing that the garage-testing was more invasive than the keyhole search in *Concepcion* because it revealed significantly more information, or at least more valuable information. In *Concepcion*, the police had already identified the building where Defendant lived; they had just arrested him in front of it and spotted his name on the mailbox there. Defendants argue that the keyhole search consequently revealed little new information; it only identified his apartment within an already-known building. Defendants argue that prior to the garage-testing, by contrast, the agents here had yet to identify Defendants' building. In fact, Defendants note that the agents incorrectly suspected that the garage door opener matched the building at 1717 South Prairie. Thus, Defendants contend, the garage-testing provided the agents with more valuable information in that, on a more basic level, it identified Defendants' building.

Defendants misconstrue *Concepcion*. *Concepcion* did not rely on what the keyhole search revealed relative to what the police already knew; rather, it relied on what the search revealed relative to what the police *could have* known through independent means involving neither probable cause nor a warrant. *Concepcion*, 942 F.2d at 1173. As in *Concepcion*, the

agents here could have learned the same information by following Defendants home or asking neighbors where they lived. Under *Concepcion*, their decision to use lawfully-obtained garage door openers instead does not render their conduct unconstitutional.

Moreover, even if *Concepcion* did not specifically authorize the garage-testing, *United States v. Knotts*, 460 U.S. 276 (1983) did. In *Knotts*, the police used a beeper to track a container's movements through public streets without a warrant. The Supreme Court found that there was no search because a "person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another"; when the defendant "travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." *Knotts*, 460 U.S. at 281-82. The Supreme Court further reasoned that "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." *Id.* at 282. Here, the garage-testing similarly identified a fact observable from public streets; the police could have learned where Defendants lived simply by watching them enter and exit their building. Defendants had no reasonable expectation of privacy in this fact because they voluntarily conveyed it to the public on a daily basis. Accordingly, Supreme Court precedent, if not Seventh Circuit precedent, specifically authorized the garage-testing.

Finally, Defendants argue that the Government fails to carry its burden of establishing good faith. Defendants cite no case law for their assumption that the Government bears this burden. Although the Supreme Court did not explicitly address the issue in *Davis*, it did characterize the core inquiry as whether the government acted in "objectively" reasonable

9

reliance on binding appellate precedent. *Davis*, 131 S. Ct. at 2423. *Davis* extends *Leon*, and *Leon* provides that courts are to "eschew inquiries into the subjective beliefs of law enforcement officers" because "'sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources.'" *Leon*, 468 U.S. at 923 n.23 (citing *Massachusetts v. Painten*, 389 U.S. 560, 565 (1968) (White, J., dissenting)). In *Herring*, the Court reiterated that the "pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers." *Herring*, 555 U.S. at 145 (internal quotation marks and citations omitted). In other words, the Supreme Court has confined the good-faith inquiry to the "objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Id.* (quoting *Leon,* 468 U.S. at 922, n. 23) (internal quotation marks omitted). The same rationale applies in the context of *Davis*, and here, in light of *Concepcion*, the answer to that question is "no." Accordingly, the Court denies Defendant's motion.[3]

### III. Conclusion

For the reasons stated above, Defendants' renewed motion to reconsider [149] is denied.

Dated: January 21, 2015

Robert M. Dow, Jr.
United States District Judge

---

[3] As noted in the Government's response brief [154, at 4], the Government has represented that it will not use at trial any evidence obtained from searches of Defendants' cell phones incident to arrest. Based on those representations, the Court agrees that any issue relating to those searches is moot.